```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION

                  Case No. 8:13-cv-2093-T-2093MAP
```

**DONALD WHITAKER,**

   **Plaintiff,**

                                               **5 December 2013**

**-vs-**                                         **10:00 a.m.**
                                            **Courtroom 13A**

**KABLELINK COMMUNICATIONS,**
**LLC, et al.**

   **Defendants.**
_____/

```
                     TRANSCRIPT OF PROCEEDINGS
                       (MISCELLANEOUS HEARING)
             BEFORE THE HONORABLE JAMES S. MOODY, JR.,
                UNITED STATES DISTRICT COURT JUDGE
```

<u>APPEARANCES</u>

**For the Plaintiff:**   **BERNARD R. MAZAHERI, ESQUIRE**
                        *Morgan & Morgan, P.A.*
                        20 North Orange Avenue
                        Suite 1600
                        Post Office Box 4979
                        Orlando, Florida 32801
                        Phone: (407) 420-1414
                        Fax: (954) 333-3515
                        bmazaheri@forthepeople.com

**For the Defendants:**   **IGNACIO J. GARCIA, ESQUIRE**
                        **GRETCHEN M. LEHMAN, ESQUIRE**
                        *Ogletree, Deakins, P.C.*
                        100 North Tampa Street
                        Suite 3600
                        Tampa, Florida 33602
                        Phone: (813)289-1247
                        Fax: (813)289-6530
                        ignacio.garcia@ogletreedeakins.com
                        gretchen.lehman@ogletreedeakins.com

*(appearances continued on next page)*

STENOGRAPHICALLY REPORTED
COMPUTER-AIDED TRANSCRIPTION

*SHERRILL L. JACKSON, RPR, FPR*
*Federal Official Court Reporter, U.S. District Court*
*Middle District of Florida, Tampa Division*

```
ALSO PRESENT          SARA BOSWELL (Courtroom Deputy Clerk)
                      EDDIE ROLON (Court Security Officer)

REPORTED BY           SHERRILL L. JACKSON, RPR, FPR
                      Federal Official Court Reporter
                      801 North Florida Avenue
                      Suite 13A
                      Tampa, Florida 33602
                      Phone:  (813) 301-5041
                      stenorella@aol.com
```

*I N D E X   T O   P R O C E E D I N G S*

Page

CERTIFICATE OF REPORTER .............................   19

*I N D E X   T O   E X H I B I T S*

(No exhibits were offered or received in this volume.)

```
 1              P R O C E E D I N G S     (10:00 a.m.)
 2          THE COURT:  All right.  You've seen the proposed
 3   notice that I sent -- filed; right?
 4          MR. GARCIA:   I'm sorry?
 5          THE COURT:  You've seen the notice -- proposed
 6   notice that I filed?
 7          MR. MAZAHERI:  Yes, Your Honor.
 8          THE COURT:  I think the main difference between
 9   mine and Judge Bucklew's is my view of the new agreement
10   that the employees signed.  I don't see much problem in an
11   employer requiring a new agreement if they think their old
12   agreement is in violation of the law.
13          So, if you want to argue the notice, now is the
14   time.
15          MR. MAZAHERI:  Yes, Your Honor.
16          If I may, two weeks ago on the 21st of November,
17   we had an evidentiary hearing where, I believe, eight
18   witnesses testified.  I would like for the court to take
19   judicial notice of the testimony, because the individuals
20   who testified in that case and provided declarations are
21   similar, the actions were the same.
22          What happened was, once suit was filed in this
23   case and the motion for conditional class certification
24   filed, shortly thereafter the defendant, Kablelink, had
25   their employees sign an agreement.  They didn't have a
```

```
 1  choice to sign the agreement.  If they didn't sign the
 2  agreement, they weren't going to be allowed to work.
 3          That agreement specifically said that they would
 4  not be able to participate in the collective action and that
 5  they would be responsible for the fees and costs of the
 6  defendants.
 7          At the hearing, the CEO testified that he thought
 8  that the agreement was unfair; he doesn't have a choice to
 9  go ahead and change it because it has to be done in writing.
10  And based upon the -- you know, the court's ability to
11  supervise the communications between the parties,
12  Judge Bucklew found that the communication was improper.  We
13  ask that this court does the same, because the leads and the
14  super-- the cable installers, which the cable installers are
15  the *Abdul-Rasheed* case and the leads are *Whitaker*.  Some of
16  the leads were also cable installers at some point in their
17  careers.
18          There's been an overlap of declarations made
19  between the two parties, and -- the two cases, and the
20  agreement that was found -- not only was there an agreement
21  or testimony by the CEO that's unfair, it's substantively
22  unfair here.
23          Back on October 25th of this year, the Second DCA
24  in Florida found that the -- an arbitration agreement was
25  invalid under Florida law where it required that the
```

1  plaintiff be responsible for the payment of the attorneys'
2  fees if the defendant were to lose.
3          We have that here.  We also have the agreement
4  suggesting that attorneys' fees of the plaintiff would not
5  be recovered in the case, that they've waived that aspect of
6  it.  There was communications done --
7          THE COURT:  You're saying that this new agreement
8  that they were required to sign says they could not join the
9  existing collective action for past claims?
10         MR. MAZAHERI:  That's correct, sir.
11         THE COURT:  And that they would have to pay the
12 defendant's attorney's fees for the existing action for past
13 claims?
14         MR. MAZAHERI:  Yes, if they were to join and lose
15 or if they were to bring on a new claim.
16         THE COURT:  And they were to join and lose?
17         MR. MAZAHERI:  Yes.
18         THE COURT:  All right.  Response.
19         MR. GARCIA:  Two separate -- I see it as two
20 separate issues.  One is the issue of arbitration.  I don't
21 believe this court needs to take judicial notice of what
22 occurred in the *Rasheed* case, because here we're dealing
23 with leads; there we were dealing with cable installers.
24 The leads jobs are different.  The circumstances were
25 different.  There's been no hearing here to determine

```
 1  what -- what pressures, as opposing counsel has --
 2          THE COURT:  Do you agree with his statement that
 3  the new agreement required the employees to not join the
 4  existing suit for past claims?
 5          MR. GARCIA:  The new agreement requires that all
 6  employees -- all independent contractors have to sign on and
 7  agree to mediate any claims that they have in order to be
 8  able to continue to work for Kablelink.
 9          THE COURT:  Past and future?
10          MR. GARCIA:  Past and future claims (nodding
11  head).
12          THE COURT:  Why is that not retaliation?
13          MR. GARCIA:  Well, because our argument is -- that
14  we've argued in the past is that the process of preparing
15  this arbitration agreement, though, started well before any
16  of this litigation occurred; and as -- as you can imagine,
17  right now the cable industry is going through a very
18  difficult time period.  There's lot of the litigation that's
19  going on, and Kablelink is not a huge employer.  They're not
20  a Verizon or a Brighthouse.  They don't have endless amounts
21  of funds to defend litigation.
22          So, they sought an arbitration agreement, which
23  nobody disputes that an arbitration agreement is valid and
24  applicable to FLSA claims, as a way to try to limit the
25  amount of dollars that they spend on legal defense.  Really
```

```
 1  that's the goal of the whole thing.
 2          You know, our position has always been that the
 3  process of wanting to put our independent contractors under
 4  arbitration agreement was something that was started well
 5  before any -- any litigation that this -- in this case.
 6          THE COURT:  Whether it started before or not,
 7  when -- when you -- when an employer makes an employee give
 8  up past claims, that would be retaliation under the law,
 9  wouldn't it?
10          MR. GARCIA:  We would argue it isn't, Your Honor.
11  The employees have the -- Kablelink has the right to have
12  their independent contractors required to sign on to an
13  arbitration agreement to continue to work to them.  They're
14  not waiving any rights or anything like that.  They're just
15  having their rights be heard in a different format.  And --
16          THE COURT:  Okay.  Well, I've got no problem with
17  an employer requiring their employees to sign a new
18  agreement for future claims, to clarify that they're an
19  independent contractor relationship and curing whatever
20  problems, if any, existed in their prior agreement.  But
21  when they start requiring them to give up prior rights after
22  they've filed -- after a collection -- collective action
23  exists, I think that's retaliation.
24          MR. GARCIA:  (Nodding head).  Well, if I may add
25  one other issue, Your Honor, that was brought up by opposing
```

1  counsel, there was language also in the prior arbitration
2  agreement prior to this -- this new one which has been
3  contested which had the arbitration language that had an
4  indemnification clause in that agreement.
5           And the agreement basically states that if the --
6  if the party -- the independent contractor were to lose in
7  litigation, they would have to pay the attorney's fees to
8  Kablelink.
9           That was an issue that came up in the *Rasheed*
10 hearing; but in that case, Judge Bucklew referred -- didn't
11 want to put the language in because she referred to the --
12 the most recent case that came out, the *Hernandez vs.*
13 *Colonial Grocers.*  In that case, the court held that an
14 arbitration agreement wasn't valid because there was an
15 attorneys' fee provision that said that the prevailing
16 party, regardless of whether it was a plaintiff or
17 defendant, would get their attorneys' fees; and it said that
18 under the Fair Standards Act a prevailing defendant doesn't
19 get their attorneys' fee, so you can't have that provision,
20 and they struck the arbitration agreement.
21          Judge Bucklew used that case to justify not
22 wanting to put language in the notice that says that, "If
23 you lose this lawsuit, you potentially have to pay the
24 attorneys' fees to Kablelink."
25          The reason I think that that ruling was incorrect

1  is because in that case, in the *Colonial Grocers* case, they
2  didn't address the issue of independent contractors.  It was
3  an FLSA case.  It didn't deal with independent contractors,
4  and they were just saying that, "Look.  Under the FLSA, the
5  prevailing defendant doesn't get their attorneys' fees; and
6  so, you can't have that in an arbitration agreement."  It
7  didn't address the independent contractor issue at all.
8              We cited in our response to the motion for cert
9  the *Dobbins vs. Scriptfleet* case.  This was also a Middle
10 District case, also Judge Bucklew's opinion.  It just came
11 out in the past few months; and in that case, they
12 specifically address the issue of independent contractors,
13 and Judge Bucklew said that because -- if the individuals
14 are found to be independent contractors, then the Fair Labor
15 Standards Act doesn't apply to them and the whole attorney's
16 fees provision that you can't have it for defendants doesn't
17 apply to them.  So, the indemnification language was held to
18 be valid in that case.
19             You know, for that reason, we believe that the
20 language that we provided in our proposed notice stating
21 that, "If these individuals are found to be independent
22 contractors, they could potentially be liable for our
23 attorneys' fees" is valid language.
24             The court included in its order, in its 11-4
25 order, that that language would be acceptable, but it was

1  not put in the -- in the final notice.  So, we ask that that
2  language be added.
3          THE COURT:  All right.  Response to that issue.
4          MR. MAZAHERI:  I'd like to argue it in twofold.
5  My first argument is that September 16th, 2013, Kablelink
6  wrote a written letter -- I mean, on August 16th, 2013,
7  effective September 16th, 2013, that the previous agreement
8  which was executed on 2009 or whenever the folks joined the
9  case to be invalid and unenforceable.  So, Kablelink made
10 that prior agreement void.  So, that agreement doesn't
11 exist.
12         Mr. Garcia's correct.  The courts are split on
13 whether or not that language should be in there.  The case
14 law is various.
15         My position is that the courts that find that
16 attorneys' fees would be paid by plaintiffs in Fair Labor
17 Standards Act cases are wrong.  One of the elements that a
18 plaintiff has to prove is that they're an employee of a
19 company; and if they believe that they're going to be
20 responsible for undetermined fees and costs of the
21 defendants when there's a claim where they've been
22 misclassified, they would be discouraged from joining the
23 case.
24         THE COURT:  But they have to be warned of the
25 potential consequences, don't they?  You wouldn't want them

1  to join and get to the end of the suit and they be held to
2  be independent contractors and all of a sudden they get hit
3  with attorneys' fees and they say to you, "Well, you never
4  told us that"?
5          MR. MAZAHERI:  Your Honor, it should be an
6  impossibility that they would be responsible for attorneys'
7  fees.  It is unconscionable to discourage folks to join a
8  case, and it's also unconscionable to make a plaintiff to
9  have to pay the attorneys' fees of a defendant if they were
10 able to prove their case.
11         This isn't a situation where there is not
12 misclassification going on.  The -- the executive branch
13 currently, the Department of Labor, has indicated that
14 misclassification cases are a problem of vast nature.  This
15 affects employees being able to put money into
16 Social Security.  It affects taxes being collected by the
17 government, and it also helps whether or not these employees
18 have other rights that go along here.
19         The Fair Labor Standards Act was passed back in
20 1938 shortly after the Depression in order to ensure that
21 employees would be given minimum wages and overtime.  It was
22 done for economic reasons.  It was done to protect the
23 employees.
24         Congress, at the time, understood that employees
25 did not have the same bargaining power as employers.

```
 1  Various courts -- including this court -- has found that an
 2  employee can't just waive their rights to the Fair Labor
 3  Standards Act.
 4           In this particular situation, if someone put an
 5  agreement in there, it is essentially waiving their rights;
 6  because if they can't prove that there's an
 7  employer/employee relationship, which in every case there's
 8  never a guarantee that a plaintiff is going to win.  In this
 9  particular case, that is the one issue that may very well
10  get ruled towards the defendants, and these -- these folks
11  should not have to be responsible for attorneys' fees.
12           THE COURT:  Well, what you're arguing is that the
13  parties, employers and potential employees, enter into an
14  agreement in which they both think it's an independent
15  contractor relationship and that they have a provision in
16  there about attorneys' fees; that the plaintiff, once he
17  files suit, should be able to escape that responsibility by
18  claiming that he's not an independent contractor?
19           MR. MAZAHERI:  Your Honor, there's various ways
20  why there would be lawsuits, and that indemnification clause
21  that Mr. Garcia references suggests that there's -- there
22  would be problems where someone goes into their house
23  installing the cable and there's damage caused about it and
24  they would be responsible for indemnifying the company for
25  that.
```

```
 1              The parties never intended, and that agreement
 2   doesn't suggest, that they would be responsible for having
 3   to pay for the attorneys' fees in a Fair Labor Standards Act
 4   case.  There may be situations where there would be a cause
 5   of action brought by an independent contractor against the
 6   company and that they would be responsible for the other
 7   sides' attorneys' fees; it just should not occur in a Fair
 8   Labor Standards Act indication.
 9              THE COURT:  All right.  So, you're saying that the
10   prior agreement is invalid because the employer sent a
11   letter declaring it to be invalid?
12              MR. MAZAHERI:  They did.  That is the testimony on
13   November 21st.
14              THE COURT:  Okay, and was the letter accompanying
15   the new agreement?
16              MR. MAZAHERI:  It was put in everyone's paycheck,
17   yes, if they wanted to continue working with them, that they
18   would have to sign the agreement; but the -- whether they
19   signed the agreement or not signed the new agreement, the
20   other agreement was going to become invalid within 30 days,
21   and the agreement of the -- the previous agreement said that
22   a party could terminate the agreement with written notice of
23   30 days, which Kablelink exercised.
24              THE COURT:  Well, terminating the agreement is
25   different than declaring it invalid.
```

1         MR. MAZAHERI:  I'm arguing that it's invalid, that
2    they did terminate the agreement.
3         THE COURT:  But the other side is arguing that
4    it's still valid but it was terminated as of a certain date
5    and the new agreement took over if the employee signed the
6    new agreement?
7         MR. MAZAHERI:  That would be a fair interpretation
8    of the argument, yes, sir.
9         THE COURT:  All right.  Because of the provisions
10   about them waiving their prior claims or their existing
11   claims under the potential collective action, the new
12   agreement is retaliatory, and I'm declaring it invalid.
13        Now, if the employer wants the employees to sign a
14   new agreement clarifying the independent contractor status
15   and qualifying under the law and curing whatever problems,
16   if any, exist in the old agreement, I've got no problem with
17   them, but you just can't make them waive or change prior
18   claims.
19        So, they would have an existing valid collective
20   action potential claim up to the time of the new agreement,
21   and the new agreement cannot impair those rights.
22        MR. GARCIA:  You know, a couple of points on that,
23   Your Honor -- and if that's your ruling, then we'll accept
24   that; and, in fact, Kablelink is in the process right now of
25   revising its new independent contractor agreement to address

```
 1  the Grocers case that I previously cited.
 2            And, you know, that's fine.  If that's an
 3  agreement that we can apply going forward, then that would
 4  be the case.  However, one of the reasons that that
 5  indemnification language is also important -- one is, this
 6  wasn't language that was specifically intended.
 7            THE COURT:  You don't need to argue that.  That
 8  issue is not really before me.  I assume that I'll cross
 9  that issue somewhere in the future, and it may rise or fall
10  on whether or not these employees are independent
11  contractors or whether or not they're employees.
12            MR. GARCIA:  Well, no.  I'm just talking about to
13  have the language in the notice.
14            THE COURT:  Well, I think it's appropriate to have
15  some language in the notice.  I'll probably put something in
16  there that advises them that there's that potential, and
17  I'll try not to scare them off, if I can help it; but I do
18  think they need to be warned.  So, I'll modify this notice
19  and send out a new proposed notice.
20            I don't anticipate us having to have another
21  hearing; but if you object to my new wording, you're free to
22  file something in writing, let's say, seven days after you
23  receive the new notice.
24            MR. GARCIA:  Mm-hmm.
25            THE COURT:  And I think the only change would have
```

```
 1  to do with that active issue.
 2            MR. GARCIA:  (Nods head.)
 3            THE COURT:  Okay.  Thank you.
 4            MR. GARCIA:  Thank you, Your Honor.
 5            MR. MAZAHERI:  Your Honor, may I -- I apologize.
 6  Just for the sake of efficiency, in the -- the Abdul-Rasheed
 7  case is that the arbitration provision is unenforceable.
 8  Would this court also put a paragraph in that sense to
 9  notify the individuals that even if they sign an arbitration
10  agreement, that they still would be allowed to join this
11  case?
12            THE COURT:  I'll put something in there that if
13  they have signed a new agreement, it does not impair past
14  claims.
15            MR. MAZAHERI:  Yes, Your Honor.
16            THE COURT:  But if a new agreement that is not
17  retaliatory is entered into and has an arbitration
18  provision, they're going to be bound by that for future
19  claims.
20            MR. MAZAHERI:  Yes, sir.
21            THE COURT:  So, it may be that if we get to trial,
22  their claims would stop as of the new agreement instead of
23  as of the date of trial.  Does that make sense?
24            MR. MAZAHERI:  It does, Your Honor.  If the
25  defendant is allowed to have communications repeatedly with
```

1  class members while this case is pending, you know, it
2  would -- you know, the court has, you know -- ought to
3  supervise that communications; and, you know, we don't mind
4  working with the defendants in trying to do it; but having a
5  unilateral decision to try to discourage future claims --
6          THE COURT: Well, you know, you are -- you
7  categorize it as discouraging future claims; but if the two
8  parties intended to have an independent contractor
9  relationship and an employer gets sued and finds out, well,
10 they had some problems in wording in their existing
11 contract, they have a right to cure those problems and try
12 to nail down that it is, in fact, an independent contractor
13 relationship so that in the future they don't have those
14 problems; and if the employee doesn't want to work under
15 those conditions, that's the employee's choice. But just
16 curing a legal problem is not retaliatory.
17         Now, making them waive prior rights or threatening
18 them not to join a collective action, I think, is
19 retaliatory; and that's how I've ruled this morning.
20         MR. MAZAHERI: What I'm concerned about is -- once
21 the final notice is completed and the list is provided,
22 individuals will have approximately 60 days to participate.
23 What I'm concerned about is the defendant can have
24 communications during that 60 days that would, in effect,
25 discourage people from opting into the *Whitaker* case.

```
1            THE COURT:  Well, I've already ruled one agreement
2    is retaliatory and have voided it.  If that happens again
3    and there are threats, you let me know and I may void the
4    next one, but I'm not going to stop the employer from
5    communicating with the employees to try to cure whatever
6    legal problems there may be by defining the relationship.
7            MR. MAZAHERI:  Yes, sir.  Thank you.
8            MR. GARCIA:  Thank you, Your Honor.
9            (Adjourned at 10:20 a.m.)
10                      - - - - -
```

| | |
|---|---|
| 1 | CERTIFICATE OF REPORTER |
| 2 | |
| 3 | |
| 4 | I, SHERRILL L. JACKSON, Federal Official Court |
| 5 | Reporter for the United States District Court, Middle |
| 6 | District of Florida, Tampa Division, |
| 7 | DO HEREBY CERTIFY, that I was authorized to and |
| 8 | did, through use of Computer-Aided Transcription, report in |
| 9 | shorthand the proceedings and evidence in this cause, as |
| 10 | stated in the caption on page 1 of this transcript, and that |
| 11 | the pages numbered 1 to 19, inclusive, constitute a true and |
| 12 | correct transcription of my shorthand report of said |
| 13 | proceedings and evidence. |
| 14 | IN WITNESS WHEREOF I have hereunto set my hand |
| 15 | this 31st day of December, 2013. |
| 16 | |
| 17 | *s/Sherrill L. Jackson* |
| 18 | SHERRILL L. JACKSON, RPR, FPR<br>Federal Official Court Reporter |